819 F.2d 1138
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Tammy L. MOBLEY, Plaintiff-Appellant,
v.
Otis R. BOWEN, Defendant-Appellee.
Tammy L. MOBLEY, Plaintiff-Appellant,
v.
Otis R. BOWEN, Defendant-Appellee.
 Nos. 86-3640, 86-3649.
 United States Court of Appeals, Fourth Circuit.
 Argued April 8, 1987.
Decided May 20, 1987.
 
 Before WIDENER and HALL, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 Mark Howard Bodner, Legal Services of Northern Virginia, Inc., Fairfax Legal Aid Branch, for appellant.
 Deborah Fitzgerald, Assistant Regional Counsel, Office of the General Counsel, Department of Health & Human Services (Beverly Dennis, III, Chief Counsel, Region III; Charlotte Hardnett, Supervisory Attorney, Regional Counsel; Henry E. Hudson, United States Attorney; Paula Potoczak, Assistant United States Attorney, on brief), for appellee.
 PER CURIAM:
 
 
 1
 Tammy L. Mobley appeals an order of the district court, affirming the Secretary's denial of her claim for social security disability insurance benefits prior to August 30, 1983.[1] This denial was based upon the determination of an administrative law judge ("ALJ") that before August 30, 1983, Mobley was capable of performing a wide range of work activity and was not disabled under the Secretary's medical-vocational guidelines or "grids." The district court adopted the magistrate's recommendation to affirm the Secretary's decision as supported by substantial evidence. We disagree with this disposition and conclude that the record mandates a finding that Mobley was disabled before August 30, 1983, and is entitled to an award of benefits based upon her application of May 4, 1982. We, therefore, reverse and remand the case to the district court for entry of judgment in favor of the claimant.
 
 I.
 
 2
 Mobley was born on February 17, 1963, with spina bifida[2] and a serious kidney impairment, which required her to wear a bag from childhood to take care of her kidney functions. She has a shunt to correct hydrocephalus, an abnormal accumulation of fluid in the cranial cavity, and, in addition to problems controlling her bladder and bowel functions, suffers from obesity and progressive renal failure with secondary hypertension.
 
 
 3
 Mobley attended special education classes for the physically disabled most of her childhood years, although she was mainstreamed into regular classes for part of that time. She repeated several grades and eventually obtained a high school GED diploma after her twentieth birthday while attending the Woodrow Wilson Rehabilitation Center ("Center") in Fisherville, Virginia. On August 30, 1983, claimant was admitted to the Center's work training program, where she began clerical training classes. On January 2, 1984, however, Mobley was transferred to the Center's work adjustment program due to her inability to meet the requirements of the general clerk training program, as well as because of problems with her attitude and personal hygiene. In March, 1984, based upon "the combination of medical and emotional infeasibility," Mobley's work adjustment program was terminated. At approximately the same time, claimant's renal functioning had deteriorated to the point that she required hospitalization and eventually kidney dialysis. Mobley's enrollment at the Center concluded in May, 1984.
 
 
 4
 From her father's death in 1973, until her eighteenth birthday, Mobley had received social security child's benefits under her father's earnings record. On May 4, 1982, she applied for a continuation of these benefits, alleging a lifelong disability from her spina bifida and related conditions. The claim was denied initially and on reconsideration. An ALJ upheld the denial, concluding that Mobley was capable of performing light work. The ALJ found that this assessment was "consistent with the physical requirements of claimant's attending school and entering vocational training." The Appeals Council denied review. On appeal to the district court, however, her claim was remanded for consideration of new evidence of her disability and a supplemental hearing was held.
 
 
 5
 At her hearings before an ALJ on June 2, 1983, and November 7, 1984, Mobley testified that she had difficulty walking and that she was unable to stand for long periods of time. She stated that she has suffered from these problems all of her life. Claimant further testified that she could walk only one quarter of a block before experiencing problems with her legs and back; that she could not lift a bag of groceries; that she experienced great pain if she stands too long; that she has difficulty bending and is unable to take public transportation. According to Mobley, she cannot use a broom or vacuum cleaner without losing her balance and in order to do laundry has to take it from the upstairs of her home to the downstairs by sitting and "scooting" on the steps one at a time. Her mother, Cleona Mobley, corroborated this testimony at the second hearing, further stating that her daughter would have to sit a great deal when she was young and that an earlier attempt to walk with braces had proved unsuccessful.
 
 
 6
 The medical records demonstrate that Mobley has had lifelong difficulties with walking and standing for any significant period of time. On June 7, 1982, a neurological examination by Amy Tankoos, M.D., revealed that claimant had a wide-based gait with circumduction of the hips bilaterally, no dorsi or plantar flexion in either foot, and loss of motor control in the feet. Dr. Tankoos diagnosed paraparesis or partial paralysis of the lower extremity.
 
 
 7
 In a letter dated May 18, 1983, Mobley's treating physician, Catherine Shaer, M.D., Director of the Spina Bifida Clinic at Washington, D.C.'s Children's Hospital, reported that claimant's renal impairment was irreversible and that her physical limitations prevented her from engaging in physically taxing work. Moreover, Dr. Shaer opined that Mobley would be unable to walk long distances and would be able to negotiate stairs only to a very limited degree.
 
 
 8
 In addition to her physical impairments, the record reveals psychological problems. Psychological testing completed in May, 1979, when Mobley was seventeen, showed that her performance placed her in the low-average range of intellectual functioning, with a full scale IQ of 85, and that, though improved from her last evaluation, her visual-motor skills were still at that time below average. The testing further showed that she was depressed, immature and experiencing emotional difficulties.
 
 
 9
 Following the supplemental hearing, the ALJ concluded that Mobley was disabled as of August 30, 1983. He adhered, however, to his earlier conclusion that, using the "grids" as a framework, before that date Mobley could perform a wide range of work activity.
 
 
 10
 Mobley appealed to the district court, arguing that she was entitled to an earlier finding of disability and retroactive benefits based upon her May, 1982, application. The magistrate recommended affirming the Secretary based on substantial evidence, noting that before August 30, 1983, Mobley was able to attend school, to be mainstreamed, to obtain her GED, and to move in society. The district court adopted the magistrate's recommendation, also noting Mobley's condition during high school and her subsequent physical and emotional deterioration, as well as her previous ability to walk short distances and perform limited menial tasks, such as minor secretarial work.
 
 
 11
 This appeal followed.
 
 II.
 
 12
 On appeal, Mobley contends that the limitations on her ability to stand and walk are clearly severe impairments and, standing alone, would have prevented her from engaging in many, if not all, types of sedentary work before August 30, 1983. She further maintains that there is no evidence to support the district court's assertion that she was able to perform limited menial tasks such as minor secretarial work before August 30, 1983. Moreover, appellant argues that she only obtained her GED after the August 30, 1983, disability onset date and that this achievement is neither indicative of her ability to perform work activity in a competitive environment nor probative on the issue of her disability before August 30, 1983. We agree with each of these contentions and conclude that claimant is eligible for benefits based upon her May, 1982, application and her lifelong disability.[3]
 
 
 13
 The record in this case, which we have reviewed and recounted in the preceding portion of this opinion, unquestionably demonstrates that Mobley has never been capable of engaging in substantial gainful activity. The mere fact that she underwent an attempt to be trained for work is no indicative of her capacity to perform actual work. Moreover, the serious problems which she encountered in the Center's work training and work adjustment programs make it clear that her attempt at job training was a total and dismal failure. Although the Center's reports regarding Mobley's performance in the clerical training program refers to her personal and motivational problems, the report dated March 28, 1984, also makes clear that she "did not have the ability to meet the requirements of that program." Similarly, neither Mobley's previous school attendance nor the GED which she received after attaining age twenty is indicative of any ability to work.
 
 
 14
 For these reasons, both the original and subsequent denials of disability benefits lacked substantial evidence to support them and the district court erred in affirming the Secretary's final decision.
 
 III.
 
 15
 Accordingly, the judgment of the district court is reversed, and this case is remanded for entry of an order, instructing the Secretary to award the applicable disability benefits to Mobley.
 
 
 16
 REVERSED AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 Mobley was found to be disabled and entitled to disability benefits as of August 30, 1983. She has been receiving benefits since that time
 
 
 [2]
 Spina bifida is a developmental anomaly characterized by the defective closure of the bony encasement of the spinal cord. Dorland's Illustrated Medical Dictionary, 25th Edition (1975), p. 1451
 
 
 [3]
 In light of our disposition, we do not reach appellant's additional contentions that her multiple impairments were not considered in combination and that the ALJ erroneously applied the "grids," rather than relying on the testimony of a vocational expert, to find her capable of performing work before August 30, 1983